29808.   FARMER *v.* BANKERS HEALTH AND LIFE
INSURANCE COMPANY.

DECIDED MARCH 13, 1943.

*Walter A. Sims, Ralph G. Sims,* for plaintiff.

*Hirsch, Smith, Kilpatrick, Clay & Cody,* for defendant.

STEPHENS, P. J.   A mother was named as beneficiary in a life-insurance policy issued to her son.   The policy contained a double-indemnity clause based on death by accident.   The son was shot and killed by another person.   The company paid to the beneficiary the natural-death benefit (or an amount equal to the face of the policy), taking her signature at the same time, and in the same transaction, to two documents.   One of these read as follows (omitting irrelevant matter) : "Received of the Bankers Health and Life Insurance Company . . two hundred twelve . . dollars, in full and final settlement, release, and accord and satisfaction of any and all claims against said company under policy . . on the life of Marvin E. G. Farmer."   The other instrument read (omitting irrelevant matter) : "It is fully understood by me, the beneficiary, under policy . . on the life of Marvin Farmer, that the amount paid to me to-day as stated in the receipt on the reverse side hereof [above quoted] is in full settlement of the regular death benefit provided in said policy, as well as any claim which I may have or may have had for accidental-death benefit under said policy.   I understand that the company denies liability of anything except a refund of premiums on the policy, and the amount paid to me is in the nature of a compromise settlement of my claim."   The beneficiary sued on the policy, to recover the accidental-death benefit, in the civil court of Fulton County.   The petition is not based on fraud.   It seeks merely to recover what is alleged to be a balance due and unpaid.   There was no demurrer.   The defendant pleaded accord and satisfaction.   The jury found for the plaintiff.   The trial judge overruled the defendant's motion for new trial, and on appeal the appellate division of the court entered final judgment for the defendant, basing its ruling solely on the

ground that the record disclosed no tender to the defendant of the amount paid in the compromise settlement. The plaintiff excepted.

The undisputed evidence demanded a finding for the defendant on the plea of accord and satisfaction. The verdict in favor of the plaintiff was unauthorized. The evidence discloses a proper basis for a bona fide dispute as to whether the death was accidental within the meaning of the policy. The whole record is equivocal and undecisive as to whether the face amount of the policy was due in any event. Only three excerpts from the policy appear in the record. One provision promises double indemnity for death by accident; another promises only the face of the policy if death results from the insured's violation of law; the third states that the company will owe nothing but the premiums paid if death occurs within one year from the date of the policy "from the commission of a felony by the insured." While the evidence might have been sufficient to support a verdict of acquittal, had the slayer been on trial for homicide, it contains sufficient uncertainty as to the manner in which the insured met his death to induce reasonable persons to agree to the settlement as made. The insured was killed either while taking part in a general fight among several persons, or while standing near by as a mere onlooker, or in an attempt to commit a felony on the person killing. The fact that the person killing testified that he did not intend to shoot at anybody may be true, but it does not decide the issue. In view of the third excerpt from the policy, above referred to, the date of the policy would be material, if death resulted within one year from its date as a result of the insured's commission of a felony. Nowhere in the record is the date of the policy shown, either expressly or by inference. It can not be said that the death occurred within the first year. If the company's contention that it was due to pay only the amount of the premiums was made in good faith, this would have resulted from facts making the third clause applicable. In so far as the date of the policy is material here, the duty was on the plaintiff to make the fact appear. We observe that counsel for the plaintiff approved the brief of evidence as made up by the defendant when the case was carried to the appellate division. Whether the face amount was due or not, the plaintiff received precisely that amount, but by way of compromise for her claim for the face amount plus the accidental-death benefit.

The petition does not charge and the evidence does not show fraudulent conduct, or the use of any unfair methods on the part of the agents of the company, in obtaining the release. On the contrary, the plaintiff made certain admissions in her testimony showing that she should be held to her agreement. Some of these admissions are: that before and at the time of the signing of the papers mentioned she knew the policy contained a double-indemnity clause for death by accident; that she did not know at that time whether her son had been killed by accident or not; that the company contended either that her son was shot in self-defense, or else by some means not accidental; that the company contended that it did not owe her anything; that she asked the agent of the company about the payment of the double indemnity, and was told that "there is not anything more coming" in addition to the $212 offered to her in full settlement; that she intended to receive the $212 in full settlement, but later changed her mind in this respect, "after I found out that the boy was accidentally killed;" that she could read "right good," had no trouble reading the newspapers, though she did not read the two papers she signed at the time the $212 was paid. A witness for the company testified that he read the papers to her and explained them fully before she signed them. This testimony was not denied. As was stated in *Howard v. Georgia Home Insurance Co.*, 102 *Ga.* 137, 139 (29 S. E. 143), "It may have been that the company was liable for the full amount of the policy; but the record fails to show any attempt by the company's representative to prevent the plaintiff from consulting counsel, or taking any other steps to see whether or not the entire amount of the policy was in fact collectible. . . So long as [the agent] did not use any artifice, trick, or contrivance, to prevent [the insured] from ascertaining his rights under the policy, the agreement so entered into would be valid and binding."

It can not truly be said in this case, as contended by counsel, that "plaintiff in error obtained nothing to which she was not entitled, and defendant in error gave up nothing it could rightfully retain." That question, and all doubts involved in it, are resolved by the accord and satisfaction, fairly entered into. Even if the death benefit had been conceded to be due, or should under the facts have been in good faith so conceded, there was still remaining a bona fide dispute as to the double indemnity. In such a situation

it is said: "The law in this State is that where one accepts a sum conceded to be due him on a claim, though it is less than the amount claimed and which lesser sum would be due him in any event, the bona fide dispute concerning the larger sum is sufficient consideration for the agreement to accept the smaller sum in full settlement." *Bankers Health & Life Insurance Co.* v. *Middleton,* 58 *Ga. App.* 715, 716 (199 S. E. 351). And even if there had been no dispute as to any part of the total amount claimed to be due under the policy, "Under the Code, § 20-1204, the actual payment and acceptance of a lesser sum than due would be binding if done with the understanding that the claim would thereby be satisfied." *King* v. *Liberty National Ins. Co., 59 Ga. App.* 496 (1 S. E. 2d, 223). The evidence conclusively shows a bona fide "disagreement" as to the amount due, and an "agreement," fairly entered into, of the amount that should be paid. The cases cited for the plaintiff are distinguishable on their facts. We consider it unnecessary to rule on the lack of tender (the sole ground of the judgment of the appellate division), as the judgment is affirmed without regard to the reason assigned by the court.

*Judgment affirmed. Sutton, J., concurs.*

FELTON, J., dissenting. There was evidence authorizing a finding that the insured was accidentally killed. The policy contained the following provisions: "Accidental death benefits: Upon receipt of due proof that the insured, after attaining age 15 and prior to attaining age 70, has sustained, after the date of this policy, bodily injuries solely through violent, external, and accidental means, resulting directly and independently of all other causes in the death of the insured within ninety days from the date of such bodily injuries, while this policy is in full force and effect and while premiums are not in default beyond the grace period allowed in this policy, the company will pay, in addition to any other sums, if any, already due under this policy and subject to the provisions of this policy, an accidental-death benefit equal to the face amount of the insurance then payable as a death benefit; except [certain exceptions follow which are not applicable to the present case]. No accidental-death benefit will be paid if the death of the insured is the result of self-destruction, whether sane or insane, nor if death is caused or contributed to, directly or indirectly, or wholly or partially, by disease, or by bodily or mental infirmity, nor if death is

the result of bodily injuries sustained while participating in aviation or aeronautics, or while the insured is in military or naval service in time of war, nor if death results directly or indirectly from any violation of law by the insured. . . In the event of the death of the insured within one year from the date of this policy, when such death is the result of immorality or of disease contracted prior to the date of this policy, or from resisting law or legal authorities by the insured, or from the commission of a felony by the insured, or is the result of or caused by insanity, or of suicide whether sane or insane, there shall be no liability whatever under this policy, except return of the premiums paid."

The plaintiff testified that an agent of the defendant, Mr. Brazzeal, stated that the company was going to make a settlement of $212, but that it didn't have to pay that; and that he stated to her: "You haven't been in here long enough to receive that amount." Also, that the agent stated the insured was killed in self-defense. The testimony of the agent was to the effect that the company denied liability, not because the insured had not "been in" long enough, but because the company's investigation showed that the insured was killed by another person in self-defense. Unfortunately the record does not show how long the policy had been in force at the time of the death of the insured. If it had been in force over a year, the company would have been liable for the face amount of the policy, no matter how the insured was killed. So, if the policy was a year old when the insured died, it would have been a question for the jury whether the company in good faith disputed liability for the face value of the policy. If the policy was less than a year old, there was no evidence showing the dispute to have been in bad faith. If the policy was a year old, and the jury found that the company denied liability for the face value of the policy in bad faith, a further finding was demanded that the company was liable for the face value of the policy and that the sum due thereunder was due in any event, in which case the plaintiff was not required to return the money as a prerequisite to her suit for the double indemnity, since the payment to her of the face amount of the policy was in law the payment of an undisputed and liquidated liability, and constituted no consideration for the settlement of the claim for double indemnity; otherwise if there was a bona fide dispute as to the liability for the face amount of the policy and

the double indemnity. See *Pan American Life Insurance Co.* v. *Bagley,* 55 *Ga. App.* 610 (191 S. E. 144). In my opinion the appellate division of the court erred in rendering a final judgment in favor of the insurance company.